STERN & EISENBERG, PC
1581 Main Street, Suite 200
The Shops at Valley Square
Warrington, PA 18976
Telephone: (215) 572-8111
Facsimile: (215) 572-5025
COUNSEL FOR CREDITOR

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In Re:<br>Kenneth J. Dworek and Colleen S. Dworek<br>　　　　　Debtor(s)<br>-------------------------------------------------------<br>Quicken Loans Inc.<br>　　　　　Movant<br><br>v.<br><br>Ronda Winnecour, Chapter 13 Trustee<br>　　　　　Respondent | Bankruptcy Case: 16-10705-TPA<br><br>Chapter: 13 |

### BRIEF IN SUPPORT OF CREDITOR'S PRETRIAL STATEMENT

**I.   INTRODUCTION**

Quicken Loans Inc. ("Creditor") submits this Brief in conjunction with the foregoing Pretrial Statement. As will be shown in the ensuing paragraphs, the fees sought by Creditor pursuant to its Notices of Postpetition Fees, Expenses, and Charges (the "Notice," and the "Second Notice," respectively, and collectively, the "Notices"), are reasonable fees permitted both under the terms of the contract between Creditor and Debtor Kenneth J. Dworek as well as under applicable Pennsylvania non-bankruptcy law. Further, the objecting party, the Chapter 13 Trustee (the "Trustee"), lacks standing to object to the Notice.

**II.   FACTS**

On May 31, 2013, Debtor, Kenneth J. Dworek, II ("Debtor"), executed and delivered a Mortgage granting Mortgage Electronic Registration Systems, Inc., solely as nominee for Quicken Loans Inc., a first priority mortgage lien against the real property situated at 60

McKinstrey Drive, Coolspring, PA 15739 (the "Property"), as security for his faithful performance of the covenants and obligations set forth in the Mortgage including, but not limited to, his unconditional obligation to make, tender, and/or deliver consecutive monthly payments to the mortgagee, its successors and/or assigns.[1] See Claim 1-2, Pages 9-23. The Mortgage was assigned from Mortgage Electronic Registration Systems, Inc., solely as nominee for Quicken Loans Inc. to Quicken Loans Inc., by an assignment of mortgage. See Claim 1-2, Pages 24-28.

On July 22, 2016, Debtor, along with Joint Debtor Collen S. Dworek (collectively "Debtors"), filed a Chapter 13 Voluntary Petition for Bankruptcy. On September 12, 2016, Creditor filed the Notice, which Notice itemizes expenses incurred by Creditor. Specifically, the Notice indicates that Creditor incurred Bankruptcy/Proof of claim fees in the total amount of $550.00 on July 28, 2016, August 2, 2016, and August 17, 2016. See Doc. filed 09/12/16, at Claim 1. Creditor filed the Second Notice on April 6, 2017 indicating that Creditor had incurred Bankruptcy/Proof of claim fees in the amount of $150.00 in conjunction with the filing of an Amended Proof of Claim. See Doc. filed 04/06/17, at Claim 1.

Subsequently, the Trustee filed an Objection (the "Objection") to the Notices averring that the Notices should be disallowed because the fees listed in the Notice were not explained, that the filing of a proof of claim is an administrative matter, not requiring counsel, and that the fees incurred by Creditor were unreasonable flat fees. See Doc. No. 36. Creditor then filed a response to the Objection, explaining that the $550.00 listed in the Notice is comprised of fees for the following activities by counsel: $50.00 on July 28, 2016 for counsel's entry of appearance, as well as review of the docket and filings, and for ongoing monitoring of the docket activity; $150.00 on August 2, 2016 for review of the proposed Chapter 13 Plan; and, $350.00 on

---

[1] Also on May 31, 2013, Debtor, Kenneth J. Dworek, II, executed and delivered an underlying Note in favor Quicken Loans Inc. See Claim 1-2 at Pages 7-8.

August 17, 2016 for preparation and filing of the Proof of Claim on behalf of Creditor. Further, the response to the Trustee's objection explained that the $150.00 listed in the Second Notice was for fees for the filing of an Amended Proof of Claim, which amendment was necessitated by the fact that the payment submitted by the debtors intended for the July 1, 2016 contractual payment (pre-bankruptcy filing), which payment was received by Respondent on July 16, 2016, was reversed on July 26, 2016 due to insufficient funds. The amendment was needed to reflect that the debtors were one (1) contractual payment in arrears as of the date of the bankruptcy filing, rather than current as of the date of the bankruptcy filing.

### III. LEGAL ARGUMENT

#### A. The Trustee Lacks Standing to Object to the Notice.

Initially, it is important to note that an objection is an improper means of challenging a Notice filed pursuant to 11 U.S.C. §3002.1(c). Rather, 11 U.S.C. §3002.1(e) explicitly states that, "On motion of the debtor or trustee filed within one year after service of a Notice under subdivision (c) of this rule, the court shall, after Notice and hearing, determine whether payment of any claimed fee, expense, or charge is required by the underlying agreement and applicable non-bankruptcy law to cure a default or maintain payments in accordance with § 1322(b)(5) of the Code." To the extent that the Trustee improperly challenged Creditor's Notice over a year ago, the Trustee now lacks standing to challenge same pursuant to 11 U.S.C. §3002.1(e) as she did not timely file the proper motion.

Should this Court choose to overlook this procedural irregularity and consider the Trustee's objection as a motion for determination, Creditor further avers that the Trustee lacks standing to challenge the Notice on the basis that the Notice does not affect the bankruptcy estate.

The Trustee's authority to act in a Chapter 13 bankruptcy case is derived from 11 U.S.C. §323, and the Trustee has the capacity to sue, and be sued, pursuant to 11 U.S.C. §323(b), when acting as a party in interest of the bankruptcy estate. *First Nat. Bank of Mobile v. Norris*, 701 F.2d 902, 904 (11th Cir. 1983). The Trustee is neither an agent of the government, nor the debtor, but rather is a representative of the estate, meant to manage the estate funds for the benefit of the creditors of the estate. *In re Obie Elie Wrecking Co., Inc.*, 35 B.R. 114, 115 (Bankr. N.D. Ohio 1983); *In re Baker*, 68 B.R. 360, 364 (Bankr. D. Or. 1986).

The Notices at issue were filed pursuant to 11 U.S.C. §3002.1(c), using Official Form 410S2, intended purely to provide notice that Creditor had incurred charges in connection with the bankruptcy. The Notices do not seek to recover funds from the bankruptcy estate. [2]

Therefore any standing the Trustee has as a party in interest is derived from her interest in managing the bankruptcy estate. If an action does not affect the bankruptcy estate, the Trustee lacks authority to challenge the action. As 11 U.S.C. §3002.1(e) was added simply to provide debtor(s) with notice of post-petition fees incurred by creditors, the Notice does not seek funds from the bankruptcy estate. As the Notice does not seek funds from the estate, the Trustee lacks standing to challenge the Notice.

### B. Fees Are Permitted Under The Mortgage.

---

[2] The 2011 Committee Note for 11 U.S.C. §3002.1 states, "This rule is new. It is added to aid in the implementation of § 1322(b)(5), which permits a chapter 13 debtor to cure a default and maintain payments on a home mortgage over the course of the debtor's plan. It applies regardless of whether the trustee or the debtor is the disbursing agent for postpetition mortgage payments.

In order to be able to fulfill the obligations of § 1322(b)(5), a debtor and the trustee have to be informed of the exact amount needed to cure any prepetition arrearage, see Rule 3001(c)(2), and the amount of the postpetition payment obligations. If the latter amount changes over time, due to the adjustment of the interest rate, escrow account adjustments, or the assessment of fees, expenses, or other charges, notice of any change in payment amount needs to be conveyed to the debtor and trustee. Timely notice of these changes will permit the debtor or trustee to challenge the validity of any such charges, if appropriate, and to adjust postpetition mortgage payments to cover any undisputed claimed adjustment. Compliance with the notice provision of the rule should also eliminate any concern on the part of the holder of the claim that informing a debtor of a change in postpetition payment obligations might violate the automatic stay." Fed. R. Bankr. 3002.1 Advisory committee's note.

In the alternative, should this Court determine that the Trustee has standing to object to Creditor's Notice, a comprehensive analysis of the Notice under 11 U.S.C. §3002.1(e) should result in allowing the charges to stand.

Under 11 U.S.C. §3002.1(e):

> On motion of the debtor or trustee filed within one year after service of a Notice under subdivision (c) of this rule, the court shall, after Notice and hearing, determine whether payment of any claimed fee, expense, or charge is required by the underlying agreement and applicable nonbankruptcy law to cure a default or maintain payments in accordance with § 1322(b)(5) of the Code.

Once a motion is filed pursuant to 11 U.S.C. §3002.1(e), the creditor bears the burden of proving entitlement to recover charges itemized in the Notice. *In re Trudelle*, No. 16-60382-EJC, 2017 WL 4411004, at *3 (Bankr. S.D. Ga. Sept. 29, 2017). Accordingly, the creditor must prove: (1) the charges are recoverable under the terms of the underlying agreement, the mortgage; (2) the charges are recoverable pursuant to applicable non-bankruptcy laws and Pennsylvania non-bankruptcy law; and (3) the charges are reasonable under the terms of the Mortgage. *See* 11 U.S.C. §3002.1(e); see also *In re Lighty*, 513 B.R. 489, 494–95 (Bankr. D.S.C. 2014) Some Courts have also determined that debtors need to be provided with sufficient detail has to how the charges were incurred in order to be reasonable.[3]

The charges listed in the Notice are contemplated by the language of the Mortgage. Paragraph 7 of the Mortgage states in pertinent part:

> If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or if there is a legal proceeding may might significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy…), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

---

[3] The *In re Lighty* court, held that the insufficient amount of space on the Official Form 410S2 is not an excuse for not providing appropriate detail, but that if insufficient detail is provided on the form, the creditor may subsequently remedy the deficiency and still recover the charge itemized on the Notice. *In re Lighty,* 513 B.R. at 498.

> Any amounts disbursed by Lender under this paragraph shall become additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

<u>See</u> Claim 1-2, Page 14. The Mortgage encumbering the Property explicitly provides that the lender may pay whatever is necessary to protect its rights in the Property should the mortgagor file for bankruptcy. Further, it dictates that those expenditures are added to the principal unpaid balance of the loan. Debtor unambiguously agreed to pay the necessary expenditures incurred by Creditor in the interest of protecting its rights in the Property during the bankruptcy, and, assuming the attorneys' fees are necessary to protect the value of the Property and Lender's rights in the Property, Debtor is obligated to reimburse Creditor. *In re Ochab*, No. 16-12205-WRS, 2018 WL 1614164, at *3 (Bankr. M.D. Ala. Mar. 30, 2018).

According to the 3rd Circuit, prior to confirmation, "[t]he availability of interest, costs, and fees on a secured creditor's claim is governed by 11 U.S.C. § 506(b)." *Sponaugle v. First Union,* 40 Fed. Appx. 715, 716 (3rd Cir. 2002). According to 11 U.S.C. § 506(b), an oversecured creditor "shall be allowed" to recover "interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose." Furthermore, "'The Supreme Court has held that § 506(b) 'applies only from the date of filing [of the bankruptcy petition] through the confirmation date [of the Plan].'" *Id*. <u>citing</u> *Rake v. Wade*, 508 U.S. 464, 468, 113 S.Ct. 2187, 124 L.Ed.2d 424; *Telfair v. First Union*, 216 F.3d 1333, 1338 (11th Cir.2000). "Thus, fees arising post-confirmation are not governed by § 506(b). Rather, they are controlled by the terms of the mortgage document, itself.[1]" *Id*. <u>citing</u> *Telfair v. First Union*, 216 F.3d 1333, 1339 (11th Cir.2000). According to Debtors' Schedule D, the value of the Property is $85,000.00. <u>See</u> Doc. 8 at Page 11. Respondent's secured claim is in the amount of $64,844.17.

<u>See</u> Claim 1. Therefore, Respondent's claim is oversecured, and Respondent may recover any reasonable fees, costs, or charges provided for under the Mortgage under 11 U.S.C. § 506(b). Regardless, in the confirmed Plan, the secured claim is treated in a "cure and maintain" manner under 11 U.S.C. §1322(b)(5). Therefore, the Mortgage is not subject to discharge under 11 U.S.C. §1328 and any amounts that accrue during the life of the bankruptcy case are due and owing under the terms of the Mortgage.

Pennsylvania non-bankruptcy law also allows Creditor to recover post-confirmation charges incurred by a creditor. In determining whether payment of a post-confirmation fee, expense, or charge incurred by a creditor was recoverable from a debtor, the 3rd Circuit has found that the typical protection of lender's security does authorize fees. <u>See</u> *Sponaugle v. First Union*, 40 Fed. Appx. 715 (3rd Cir. 2002). Specifically, the 3rd Circuit determined that "11 U.S.C. §1322 is further evidence that the mortgage document governs the payment of attorneys' fees when the fees arise post-confirmation." <u>Id</u>. at n.1. Moreover, it is well established in Pennsylvania that creditors should be able to recover principal and interest without diminution of expenses incurred, including attorneys' fees. *Foulke v. Hatfield Fair Grounds Bazaar, Inc.*, 196 Pa. Super. 155, 173 A.2d 703 (1961) *Cf. Federal Land Bank of Baltimore v. Fetner*, 269 Pa. Super. 455, 410 A.2d 344 (1979); *Philadelphia Acceptance Corp. v. Krapf*, 35 Pa. D. & C. 3d 101 (Bucks Cty. Ct. Com. Pl. 1984).

Having determined that the charges are recoverable pursuant to the underlying agreement and Pennsylvania non-bankruptcy law, Creditor must also prove that the fees charged are reasonable under the terms of the Mortgage. The Trustee objects to the reasonableness of the fees sought because she claims the amounts are indicative of flat fees, and that the tasks performed are administrative in nature. The sole authority cited by the Trustee to support her claim is does

not interpret the operative law of the issue at bar. *Sadler v. Balboa Capital Corp.*, 2014 U.S. Dist. LEXIS 27161 (W.D. Pa.. 2014) involves a master lease agreement, whereas this matter is governed by 11 U.S.C. §3002.1. Rather, the fees stated in the Notice represent fees charged by Counsel for services performed in connection with the Bankruptcy. Additionally, "[f]ederal law assesses attorney's fees for 'commercial reasonableness.'" *In re Allegretti*, No. 17 B 17844, 2018 WL 1935845 at *5 (Bankr. N. D. Ill. April 24, 2018) (<u>citing</u> *Matthews v. Wisconsin Energy Corp.*, 642 F.3d 565, 572 (7th Cir. 2011); *Medcom Holding Co. v. Baxter Travenol Labs., Inc.*, 200 F.3d 518, 520 (7th Cir. 1999)). "Commercial reasonableness depends, not on the minutiae of an attorney's billing, but on 'the market's mechanisms.'" *Id*. (<u>citing</u> *Medcom Holding Co. v. Baxter Travenol Labs., Inc.*, 200 F.3d 518, 520 (7th Cir. 1999); *Capital One Auto Fin., Inc. v. Orland Motors, Inc.,* No. 09 C 4731, 2012 WL 3777025, at *4 (N.D. Ill. Aug. 27, 2012)). Instead of a detailed review of the attorney's fees, courts look to the aggregate costs in order to ensure that such costs are reasonable in comparison with the nature of the case. *Id*. (<u>citing</u> *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 774 (7th Cir. 2010); *Matthews v. Wisconsin Energy Corp.*, 642 F.3d 565, 572 (7th Cir. 2011)). "The strongest evidence that fees are commercially reasonable is that the client paid them, especially when recovery was uncertain." *Id*. (<u>citing</u> *Cintas Corp. v. Perry*, 517 F.3d 459, 469 (7th Cir. 2008); *Medcom Holding Co. v. Baxter Travenol Labs., Inc.*, 200 F.3d 518, 520; *Balcor Real Estate Holdings v. Walentas–Phoenix Corp.*, 73 F.3d 150, 153 (7th Cir. 1996).

Federal National Mortgage Association (hereinafter, "Fannie Mae") fee guidelines for creditor counsel are also instructive here. The Fannie Mae guidelines state that the maximum fee reimbursement for a proof of claim preparation and plan review is $650.00. In this case, Creditor is seeking a total of $550.00 for reimbursement for proof of claim preparation and plan review

and counsel's notice of appearance. According to Fannie Mae's billing guidelines, "[t]hese fees include: Communicating with the servicer to obtain the necessary information about the debtor's loan(s) and backup documentation for the POC; Preparing and filing the POC form, and up to one amended POC form; Verifying that the POC is properly docketed; Monitoring the docket, and obtaining and reviewing the original and up to two amended Plans; Analyzing Plan(s); Reviewing any disclosure statement and ballot (if applicable); and Communicating and negotiating with the Servicer, any trustee and debtor's counsel." Specific to this case, counsel for Creditor performed the following activity on behalf of Creditor in relation to the proof of claim preparation and plan review: counsel's entry of appearance, as well as review of the docket and filings, and for ongoing monitoring of the docket activity; review of the proposed Chapter 13 Plan; and preparation and filing of the Proof of Claim on behalf of Creditor. Furthermore, the $150.00 fee listed in the Second Notice was for the filing of an Amended Proof of Claim, which amendment was necessitated by the fact that the payment submitted by the debtors intended for the July 1, 2016 contractual payment (pre-bankruptcy filing), which payment was received by Respondent on July 16, 2016, was reversed on July 26, 2016 due to insufficient funds. The amendment was needed to reflect that the debtors were one (1) contractual payment in arrears as of the date of the bankruptcy filing, rather than current as of the date of the bankruptcy filing.[4] As the fees at issue are within the Fannie Mae guidelines, they are reasonable under the industry standard. Additionally, fees charged in excess of Fannie Mae guidelines may be considered reasonable as long as they are incurred for work in conjunction with the bankruptcy. *In re Formosa*, 582 B.R. 423, 434–35 (Bankr. E.D. Mich. 2018).

---

[4] Courts have previously warned that simply stating "attorneys' fees" or "proof of claim fees" on the Notice is insufficient detail required by 11 U.S.C. §3002.1(c) because a Notice, unlike a POC, does not carry the presumption of being *prima facie* evidence as to the validity of the amount claimed. *In re Pittman*, No. CV 14-03404-HB, 2015 WL 1262837, at *2 (Bankr. D.S.C. Mar. 16, 2015). As a result, the foregoing is provided as an explanation of how the Notice charges were incurred.

## V. CONCLUSION

The Trustee lacks standing to challenge the Notice because she incorrectly objected to the Notices rather than filing a motion for determination, and she further lacks standing because the Notices are simply Notices and do not seek funds from the bankruptcy estate. Further, even if the Trustee has standing to challenge the Notice, the reasonable post-petition fees Creditor incurred were permissible based on the Mortgage executed by Debtor Kenneth J. Dworek, as well as under Pennsylvania non-bankruptcy law.

Respectfully submitted,
STERN & EISENBERG, PC

By: /s/ William E. Miller, Esq.
William E. Miller, Esq.,
1581 Main Street, Suite 200
The Shops at Valley Square
Warrington, PA 18976
Phone: (215) 572-8111
Fax: (215) 572-5025
Bar Number: 308951
Email: wmiller@sterneisenberg.com

Date: May 18, 2018